HUGH MEEHAN *vs.* PETROLEUM HEAT & POWER COMPANY.

AUGUST 22, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This action in trespass on the case for negligence arising out of a collision between two motor vehicles on a public highway was tried in the superior court before a jury and resulted in a verdict for the defendant. Thereafter the trial justice granted the plaintiff's motion for a new trial and the case is before us on defendant's single exception to that decision.

In the trial of the case considerable testimony was given with general reference to places shown on a map which is in evidence, but such locations, though apparently pointed out to the jury, were not sufficiently described in the transcript so that this court can be certain as to the exact places to which such testimony referred. However, there is testimony from which the following facts appear concerning the conditions and location as they were at the time of the accident.

On May 3, 1948 the plaintiff's automobile was being operated with his consent by his nephew, a minor eighteen years of age, who for less than a month had held a license to operate a motor vehicle, although he apparently had been driving under the direction of another for approximately two years. Plaintiff's car was proceeding northerly on South Main street, which runs north and south, and was

approaching the intersection of that highway with Bridge street, which runs east and west but does not cross the circular area into which several public highways converge and where traffic was regulated by a rotary. The operator intended to go to the center of Providence by way of Bridge street, but according to regulations traffic coming from the south on South Main street could not turn directly to its left or westerly into Bridge street. Nor could such traffic proceed northerly across Bridge street into the other or northerly portion of South Main street. All such traffic coming from the south was required, considerably before it approached the intersection, to follow a sign and markings on the road area and to bear easterly around a rotary, keeping the latter always on his left, before continuing north or entering Bridge street to go west.

The plaintiff's operator, however, did not follow these signs and regulations. He admitted that he was familiar with the area, although he had never gone around the rotary from that direction. He approached Bridge street directly from the south and slowed down to ten miles per hour because to his left the view westerly into Bridge street was blocked by the Providence Engineering Works building on the southwest corner. It was about 7:30 o'clock in the morning, the weather was clear and there was little traffic. When plaintiff's operator thus slowed down, he saw the defendant's truck approaching from the west along the southerly side of Bridge street. He then stopped almost immediately at a point which was westerly from what would be the extended easterly line of South Main street and slightly over or northerly from the extended southerly line of Bridge street. At that point the rotary was entirely to his right. Where defendant's truck was first sighted by plaintiff's operator or when plaintiff's car was stopped is not ascertainable from the transcript. According to the plaintiff's evidence, while he was thus stopped the defendant's truck bore down on him from his left without any change of speed or direction, and its right front bumper

collided with and damaged the left front portion of plaintiff's car.

On the other hand, the driver of defendant's truck testified in substance that he was driving easterly on the southerly side of Bridge street intending to bear right or southeasterly through the area into Fox Point Boulevard, one of the streets that converged at the rotary. He was familiar with the traffic regulations in that area. He slowed down the truck on Bridge street just before coming to the intersection to permit a car to drive out of the gas station on Bridge street next to the southwest corner where the Providence Engineering Works building was located. He also shifted to second speed in order to make the slight incline with his loaded truck. He did not expect any traffic from his right, that is, from the south on South Main street, because traffic from that direction was supposed to bear easterly at some distance away and to go around the rotary, which was considerably further east. He testified that the plaintiff's car unexpectedly "rolled" out of South Main street directly toward Bridge street; that both vehicles approached the intersection and place of the accident at about the same time; and that both were actually moving at the time of the collision although each had been slowed appreciably just prior thereto. There were no eyewitnesses to the accident who testified other than the two operators.

The jury evidently believed the evidence for the defendant and returned its verdict accordingly. The trial justice, however, in deciding plaintiff's motion for a new trial came to the conclusion that the verdict was contrary to the fair preponderance of the evidence, and that the jury apparently had failed to follow the instructions on the law which he had given to them.

In our opinion he was in error on both of these conclusions. In passing upon the weight of the evidence, he appears to have considered that the testimony of plaintiff's operator was corroborated by the fact that when he asked

the defendant's driver if his insurance company would pay for the damage the latter by his answer in effect admitted wrongful operation at the time. It is apparent that the trial justice misconceived the evidence in this respect, because he recites it in his rescript as if the statements were made in a different order and were a spontaneous explanation of the accident itself or an admission against interest made by defendant's agent at the time of the accident. In our judgment the evidence does not come within either of these categories.

The testimony thus relied upon concerned a conversation which took place after an exchange of licenses and is as follows: "Q. After the accident did you have any discussion with Mr. Meehan? A. No. The only discussion was he asked me if my company, insurance company, would pay for his damage. I told him I didn't think so, not being over here. He said, 'Will mine pay for it?' I said, 'I couldn't say nothing about that.'" It seems clear to us that such statements tend to confirm the testimony of the defendant's driver to the effect that plaintiff's car and not the defendant's truck was being operated contrary to the rules of traffic at that time and place. In any event, it does not amount to an admission of liability. Nor can it reasonably be used to weaken the defendant's credibility because the testimony actually came from the defendant's driver and was not otherwise denied.

The trial justice in appraising the credibility of plaintiff's operator stressed the evidence that one of defendant's mechanics corroborated his testimony as to the location of his car *after* the accident. There was no dispute as to that. The fact that plaintiff's operator was corroborated in such respect would not mean that he necessarily had been free of contributory negligence and had stopped his car for a sufficient time to charge the defendant truck driver with the duty of slowing down or otherwise avoiding the accident. How long before the accident the plaintiff's car was stopped, as the operator thereof testified and as

the trial justice apparently believed, and where the defendant's truck was at the time it was thus stopped does not appear in the evidence. The nearest to it seems to be the testimony of defendant's driver that both vehicles arrived at that point in the intersection at about the same time. We are of the opinion, therefore, that the trial justice misconceived the evidence and weight thereof in reaching his conclusion.

The trial justice also seems to have taken the view that the jury failed to follow the law as charged, but nothing appears in his rescript and nothing has been pointed out in argument to show wherein the jury failed to follow his instructions. The usual instructions concerning negligence, contributory negligence and the burden of proof were given in the instant case and no exception was taken by either party. Assuming that such instructions were correct, the evidence presented a clear conflict on how the accident happened and it does not appear wherein the jury failed to follow the law.

Since the trial justice's conclusion was based materially upon a misconception of the evidence and an erroneous belief that the jury had not followed the law of the case, the decision cannot be given the usual weight, as is done where the trial justice recognizes and applies the proper rules in passing on a motion for a new trial. In the circumstances we are obliged to review the evidence ourselves from the transcript without the benefit of his decision and appraisal. In so doing, however, we are bound to apply the appellate court's rule rather than the ordinary rule as to preponderance under which the trial justice passes his judgment upon a verdict; and unless we can conclude that the evidence *strongly* preponderates against the verdict we may not set aside the findings of a jury. *Bradley* v. *Brayton,* 61 R. I. 44; *Monacelli* v. *Hall,* 71 R. I. 55; *Payne* v. *United Electric Rys.,* 75 R. I. 281.

Accordingly we have examined the transcript and we cannot say that the evidence for the plaintiff *strongly* pre-

ponderates against the verdict. According to the evidence for the defendant the plaintiff's car was traveling on a part of South Main street where traffic from the south was not reasonably to be expected by the truck driver and it was violating regulations directing traffic around the rotary. If the jury believed the truck driver's testimony, especially when considered in the light of physical facts, traffic regulations and other reasonable inferences to be drawn from the evidence, the jury's verdict for the defendant would have been justified. On the other hand if the jury believed the plaintiff's version of the accident then a verdict for the plaintiff might have been reasonable providing there was evidence to satisfy the jury that the defendant's truck was a sufficient distance away, when the plaintiff's car was first stopped, to permit the defendant's driver in the circumstances to have avoided the collision.

In other words, the evidence is conflicting on a vital issue and reasonable minds might naturally come to different conclusions on the evidence here, depending upon which operator was believed. In such circumstances the verdict of a jury should not be set aside upon a mere doubt as to its correctness or because the trial justice's judgment inclines him against it. *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180; *Humes* v. *Schaller,* 39 R. I. 519. Unless he can point to something in the evidence by which material testimony is so impeached that it warrants, in the exercise of his independent judgment, the granting of a new trial in order to do substantial justice, a jury's verdict based on such conflicting evidence that is nearly balanced should not be set aside. *Anderson* v. *Johnson,* 59 R. I. 241. Nothing is pointed out in the rescript of the trial justice or in the arguments of counsel and we can find nothing in the transcript which shows that the testimony for the defendant was thus impeached. In the circumstances we cannot say that the evidence strongly preponderates against the jury's verdict and therefore it should not be set aside.

The defendant's exception is sustained, and the case is remitted to the superior court for entry of judgment on the verdict.

*Edward M. McEntee, Francis J. Maguire,* for plaintiff.

*Greenough, Lyman & Cross, Owen P. Reid,* for defendant.